UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN FOX,<br><br>  Plaintiff,<br><br>  vs.<br><br>UNITED STATES OF AMERICA,<br><br>  Defendants. | CASE NO. SACV 10-1594-JST (AJWx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Plaintiff Steven Fox ("Fox") filed this action against the United States ("Government") seeking a declaration from this Court that, by valid assignment from Aaron Tonken ("Tonken"), he holds all of the right, title, claim, and interest in certain life insurance policies. Specifically, he seeks to have this Court determine that his rights based on Tonken's assignment are superior to those asserted by the Government. The Government disputes that Fox has any interest in the policies, and asserts that the restitution order issued after Tonken was convicted of fraud has priority.

On November 8, 2011, a court trial was held. The trial consisted of the testimony of one witness and took less than two hours. On November 22, 2011, the parties submitted proposed Findings of Fact and Conclusions of Law. On December 28, 2011, the Court issued an Order for Supplemental Briefing, and on January 23, 2012, the parties submitted supplemental briefs. Plaintiff thereafter submitted a further "Reply Memorandum," which was not authorized by the Court and therefore, not considered.

The following constitutes the findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52. To the extent that any findings of fact are included in the Conclusions of Law section, they shall be deemed findings of fact, and to the extent that any conclusions of law are included in the Findings of Fact section, they shall be deemed conclusions of law.

**Findings of Fact**

1. Tonken was a promoter and producer of purported charitable fundraising events. Although Tonken had produced legitimate charitable events prior to 1999, from 1999 to 2002, he used those purported events to defraud numerous underwriters, donors, celebrity guests, and other individuals. Specifically, he diverted funds for his own personal use to satisfy obligations relating to prior events unrelated to the events for which he obtained funds, or otherwise for purposes not associated with the events. If the event generated more than it cost, he failed to distribute funds to the charities as promised.

2. As a result of Tonken's fraudulent activities, at least twelve victims lost a total of over $3 million.

3. On May 16, 2003, the United States Attorney filed a criminal complaint against Tonken based on his charity fraud activities.

4. Tonken waived indictment and agreed to plead guilty to a criminal information.

5. The Information was filed on November 14, 2003, charging Tonken with one count of wire fraud and one count of mail fraud.

6. On December 9, 2003, Tonken's guilty plea was entered.

7. On February 10, 2004, Tonken filed a voluntary chapter 7 bankruptcy petition. Tonken was represented by attorney Philip Dapeer in the bankruptcy matter. On March 9, 2004, Tonken filed a schedule of unsecured claims in the bankruptcy matter, listing Plaintiff Fox as a creditor holding an unsecured claim in the amount of $3.5 million. At the time Dapeer represented Tonken in the bankruptcy matter, he was also representing Fox, and had been Fox's attorney since the 1970's. Indeed, Mr. Dapeer represents Fox in the proceeding presently before the Court. Fox had referred Tonken to Dapeer.

8. On July 19, 2004, Tonken received a copy of the Presentence Report prepared by the Probation Department in the criminal matter. The Presentence Report states that victim restitution is statutorily mandated, and lists the total restitution amount owed by Tonken as $3,077,000. Fox is not listed as a victim of fraud in the Presentence Report, and was never identified as a victim in the criminal case.

9. The Judgment and Commitment Order in the criminal case ordering over $3 million in restitution to the identified victims was entered on August 26, 2004.

10. At the trial of this action, the only witness was Plaintiff Fox.

11. Fox testified that sometime in the late 1990's, Tonken "received monies unauthorized by [Fox.]" Fox testified that he had been out of the country when it happened and learned about the theft during a company audit. According to Fox, Tonken took approximately $3.5 million by essentially bribing the employee who was running

1  Fox's company in Fox's absence.  Fox could not recall whether it was in 1997 or 1998.
2  Fox never reported the matter to any authorities, and essentially took no other action
3  concerning Tonken.  Fox's testimony with regard to the purported $3.5 million loss was so
4  vague and undeveloped that the Court found it to be less than credible.
5  12.     At trial, Fox presented a document titled "Assignment of Rights and Claims"
6  ("Exhibit 1"), to support his claim of a superior assignment right.  Exhibit 1 was signed by
7  Tonken on August 12, 2004, approximately one month after the disclosure of the
8  restitution amount in the Presentence Report and 14 days before the entry of the restitution
9  order by the court in the criminal action.  Exhibit 1 was drafted by attorney Dapeer who
10 presented it to Tonken, while Tonken was incarcerated in a federal prison.
11 13.     Exhibit 1 is an incomplete document.  It was a copy that was not signed by Fox and
12 did not include any of the exhibits referenced in, and purportedly attached to, the
13 assignment.
14 14.     Exhibit 1 provides that Fox is to file an adversary complaint in Tonken's
15 bankruptcy case "in the form attached hereto as exhibit 'A.'"  No exhibit "A" is attached to
16 Exhibit 1.  However, a Complaint to Determine Non-Dischargeability of Debt ("Exhibit
17 7") was admitted into evidence.  Exhibit 7 was filed by Fox as "plaintiff in pro per" in
18 Tonken's bankruptcy case.  Fox testified that Exhibit 7 was in fact prepared and filed by
19 attorney Dapeer.  Contrary to Fox's testimony at trial, Exhibit 7 -- filed with the
20 bankruptcy court on September 14, 2004 -- characterized the monies received by Tonken
21 from Fox as a loan that Fox had made to Tonken within the four years prior to the filing of
22 Exhibit 7, not as monies that were taken by Tonken without authorization in the late
23 1990's.  This fundamental inconsistency further detrimentally impacts Fox's credibility as
24 to any alleged loss.
25 15.     Exhibit 1 also provides that, once Fox initiated the adversary proceeding, Tonken
26 was to serve and file a "stipulation for judgment in form that is attached as exhibit 'B'
27
28

4

1  hereto." No exhibit "B" is attached to Exhibit 1, and no evidence was presented that
2  Tonken filed a stipulation for judgment.

3  16.  Exhibit 1 further provides that in the event no stipulation for judgment is filed or
4  in the event that the bankruptcy court does not enter judgment on the stipulation, "this
5  Agreement shall be of no further force or effect and shall be treated as entirely void from
6  inception." No evidence was presented that the bankruptcy court ever entered judgment on
7  the stipulation. To the contrary, the evidence reflects that Tonken's debts were discharged
8  in bankruptcy.

9  17.  The Court finds that, at the time Tonken executed Exhibit 1, he and Fox knew that
10  Tonken's sentence in the criminal case would include an order that he pay millions of
11  dollars in restitution to his fraud victims.

12  18.  Attorney Dapeer prepared two more documents relating to a purported assignment
13  of rights and claims by Tonken to Fox. The first is titled "Reaffirmation Agreement" and
14  was signed by Tonken on November 19, 2007 ("Exhibit 9"). The agreement purports to
15  reaffirm the validity of Exhibit 1. Nothing in Exhibit 9 identifies whether Dapeer, who
16  represented Fox at the time, continued to represent Tonken.

17  19.  The second is titled "Assignment of Rights and Claims" and was signed by Tonken
18  and Fox on February 3, 2009 ("Exhibit 11"). Exhibit 11 was also drafted by attorney
19  Dapeer at Fox's request. Exhibit 11 purports to resurrect Exhibit 1 by having Tonken
20  "acknowledge" and "confirm" that it "was not necessary for Fox to have proceeded by way
21  of a complaint to determine non-dischargeability of debt… in order to render the
22  assignment of August 12, 2004 valid and effective."

23  20.  The parties stipulated that Fox "duly perfected his rights under the assignment
24  agreement by filing appropriate Uniform Commercial Code Financing Statements in the
25  appropriate jurisdictions." Fox did not admit, as an exhibit, a copy of any UCC Financing
26  Statement at trial and there was no testimony or other admitted evidence reflecting the date
27  on which the UCC Statements were filed.

28

5

**Conclusions of Law**

1. Fox has failed to show that Exhibit 1 operates as a valid assignment of any of Tonken's rights, claims or assets to Fox.

   a. First, Exhibit 1 is a materially incomplete document.

   b. Second, by its very terms, Exhibit 1 was to be "treated as entirely void from inception" -- sometimes referred to as void *ab initio* -- unless a stipulated judgment of non-dischargeability was entered in the bankruptcy case. Plaintiff failed to show that such a judgment was entered, and, in fact, the evidence reflects to the contrary. By the plain language of Exhibit 1, it is void from its inception. A void contract, unlike a voidable contract, is a "legal nullity." 1 Richard A. Lord, Williston on Contracts § 1:20 (4th ed. 2011). A voidable contract is "one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract." *Id.* By contrast, "'void ab initio' means a bargain is null from the beginning, as from the first moment when the purported contract was entered into." *Id.* Hence, Fox cannot rely on Exhibit 1 to show a valid assignment.

   c. Third, Fox cannot resurrect Exhibit 1 through either Exhibit 9, executed in 2007, or Exhibit 11, executed in 2009. Neither is a valid ratification of Exhibit 1. As of the date of the purported ratification, Exhibit 1 was void.

   > "Promises that are void cannot be ratified. The reason for this is simple: Void promises are not legally binding and thus, are not contracts. . . . Without an antecedent contract to ratify, there can be no ratification. To say that a promise is void is to say that it created no legal obligation and that the promisor is without the power to bind himself under a new promise to perform the antecedent promise."

1   *Wamsley v. Champlin Ref. & Chems., Inc.* 11 F.3d 534, 539 (5th Cir. 1993)
2   (citations omitted).  Moreover, there was no evidence of any consideration for the
3   purported modification.  Fox appears to argue that he was excused from proving the
4   validity of the assignments because the final pretrial conference order did not
5   reserve issues relating to consideration or enforceability of the assignment
6   agreements.  Fox is incorrect.  The Final Pretrial Conference Order included as one
7   of the issues to be tried the "effect and meaning of the assignments."  Nothing
8   further was required to preserve the issue for trial.
9   2.   Fox failed to show that he perfected any interest through a UCC filing.
10        a.   While the parties stipulated that Fox perfected his "rights under the
11             assignment agreement," this Court has concluded that Fox had no such rights as the
12             agreement was void.
13        b.   Moreover, absent the actual UCC Financing Statements, there is no basis for
14             determining specifically what purported rights Fox attempted to perfect or when he
15             did so.

16   ///
17   ///
18   ///
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28

3. In sum, Fox has failed to meet his burden of proving that he has a right to declaratory judgment in his favor.[1]

The Government is ordered to prepare a proposed judgment and file it with the Court forthwith.

DATED: March 07, 2012  _____

JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE

---

[1] In light of the Court's determination that Plaintiff has failed to carry his burden of proof, the Court will not address the problematic issues raised by the Government's assertion of purported "affirmative defenses." Specifically, the Government defended this case based on two affirmative defenses -- namely, fraudulent transfer and priority of the Government's lien -- never raised by the pleadings or included in the Pretrial Conference Order. Indeed, the Government compounds the problem by acknowledging in its post-trial supplemental briefing that its legal argument regarding priority was incorrect, and requesting that the Court take judicial notice of the recording of a judgment lien filed with the Los Angeles County Recorder's Office by the Government. Again, in light of the Court's ruling, it declines to address these issues.